AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
Southern District of Florida

<table>
<tr><td>United States of America<br>v.<br><br>BRIAN PETER SIMEON<br><br><br>_____<br>Defendant(s)</td><td>)<br>)<br>)<br>)<br>)<br>)<br>)</td><td>Case No.  25mj6679-Valle</td></tr>
</table>

FILED BY ____AR____ D.C.

**Nov 19, 2025**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FTL

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____October 15-23, 2025_____ in the county of _____Broward_____ in the _____Southern_____ District of _____Florida_____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(a)(1)(A) | Unlawful dealing in firearms |
| 18 U.S.C. § 922(d)(1) | Unlawful sale of firearm or ammunition to prohibited person |
| 18 U.S.C. § 922(o) | Unlawful possession of a machinegun |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Cesar Calcano, Special Agent ATF
*Printed name and title*

Attested to by the Applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by ___FaceTime___

Date: _____11/19/2025_____

_____
*Judge's signature*

City and state: _____Fort Lauderdale, Florida_____

Honorable Alicia O. Valle, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

Your affiant, Cesar Calcano, being duly sworn, deposes and states as follows:

### INTRODUCTION

1.	I am currently a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) assigned to Miami Field Division, Fort Lauderdale Field Office and have served in that capacity since September of 2020. I am currently assigned to the Broward Sheriff's Office Strategic Investigations Division / Broward County Gang Investigations Task Force (GITF) and have held this position since December of 2021. Some of the primary responsibilities of this position are to identify and document criminal gang members, conduct narcotics enforcement, investigate firearm violations, and gather/share intelligence involving criminal gang organizations. As part of my duties, I am responsible for investigations of violations of Federal laws, including those pertaining to firearms. I am a graduate of the Criminal Investigator Training Program at the Federal Law Enforcement Training Center in Glynco, Georgia. Prior to my tenure as a Special Agent, I was a Border Patrol Agent with the United States Border Patrol for ten years. As a Border Patrol Agent, I was assigned to the ATF Violent Crimes Task Force for two years. I have conducted multiple investigations involving, but not limited to the illegal possession and "straw purchasing" of firearms, carjacking, Hobbs Act Robbery, and possession of a firearm in furtherance of narcotics trafficking. I have participated in a variety of different aspects of those investigations, including surveillance, undercover operations to conduct controlled purchases of narcotics, interviewing suspects, and the execution of search and arrest warrants.

2.	I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws.

3.      I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), in that I am empowered by law to conduct investigations of, and to make arrests for, federal offenses, including but not limited to offenses involving firearms offenses, including violations of Title 18, United States Code, Section 922. I am authorized to apply for and execute both search warrants and arrest warrants for offenses enumerated in Titles 18 and 21 of the United States Code.

4.      I make this Affidavit in support of a criminal complaint charging **BRIAN PETER SIMEON**, with 18 U.S.C. § 922(a)(1)(A) (unlawful dealing in firearms); 18 U.S.C. § 922(d)(1) (unlawful sale of firearm or ammunition to prohibited person); and 18 U.S.C. § 922(o) (unlawful possession of a machinegun).

5.      I submit this Affidavit based on my personal knowledge, as well as information provided to me by other individuals, including other law enforcement officials, and my review of records and other evidence obtained during the course of this investigation. Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, it does not include every fact known to me about this matter.

## PROBABLE CAUSE

6.      In or about February 2025, ATF received information that **SIMEON**, a non-United States citizen, was actively selling firearms in Broward County Florida, as well as illegally shipping them to the Bahamas.  In approximately August 2025, an undercover officer (the "UC") began conducting controlled purchases of firearms from **SIMEON** and his associates.  To date, the UC has made at least six purchases of firearms from **SIMEON**, including Glock switches and a Glock firearm with a switch already attached, and a grenade launcher.

2

7.      Based on a review of relevant databases, SIMEON does not have a federal license to lawfully sell firearms.

**October 15, 2025 Controlled Purchase**

8.      On or about October 14, 2025, **SIMEON** sent a text message to the UC indicating he was headed toward West Palm Beach to pick up firearms that would be available for sale. **SIMEON** sent the UC several pictures of these firearms including a black firearm equipped with a white drop-in auto sear (Machine Gun Conversion Device/MCD). **SIMEON** further indicated it was a "fully,' which based on my training and experience I believe to be vernacular for a full-automatic firearm.  The UC discussed with **SIMEON** in text messages that the UC was sending the firearms purchased from **SIMEON** to individuals in Colombia. **SIMEON** agreed to meet the next day at a mall in Broward County and sell the UC the fully automatic firearm and a Glock 43X.

9.      On or about October 15, 2025, at approximately 10:22 am, **SIMEON** was observed arriving in a Black Ford Fusion (FL: DW33GX).[1] **SIMEON** exited his vehicle carrying a dark colored backpack and entered the front passenger side of the Undercover Vehicle ("UCV"). This meeting was audio and video recorded by the UC.  **SIMEON** retrieved a pistol from inside of his sweatshirt and handed it to the UC. **SIMEON** then retrieved an additional firearm from his backpack and handed it to the UC.  **SIMEON** retracted the firearm's receiver pin, exposing the inside of the lower receiver and told the UC, "It's right there" referencing the drop-in auto sear. **SIMEON** then assisted the UC in putting the receiver pin back into place before handing the UC the firearm. The UC asked **SIMEON** if there was a way to put the firearm on fully automatic, to

---

1 – Law enforcement observed **SIMEON** in this same vehicle at his residence on or about October 9, 2025

which **SIMEON** indicated that it was already on fully automatic.

10.     The UC then inspected the Glock 43x pistol. **SIMEON** explained the price of building the pistol as it had customized components. The UC and **SIMEON** then discussed the purchase of additional firearms. **SIMEON** told the UC that his source has additional fully automatic firearms available. **SIMEON** then explained the difference between the drop-in full auto sear and the "button," which based on my training and experience I believe to be street vernacular for a fully automatic device installed on back of a Glock pistol.

11.     The UC ultimately paid **SIMEON** $2,750.00 of ATF Official Investigative Funds (OIF) in exchange for both firearms. **SIMEON** and the UC then continued to talk about additional firearm purchases. **SIMEON** offered to introduce the UC to his firearms source in West Palm Beach which he claimed that he would be meeting up with later that day. The UC expressed interest in meeting the source if feasible.

12.     Once the transaction concluded, **SIMEON** exited the UCV and left the area. The UC then drove to a predetermined location and provided the firearms – a privately manufactured (PMF) 5.56 caliber pistol equipped with a MCD and a Glock 43x .9mm – and ammunition to another agent.

13.     Based on my training and experience and review of relevant databases, I know that Glock firearms are manufactured outside the state of Florida.

**October 20, 2025 Controlled Purchase**

14.     On or about October 20, 2025, **SIMEON** agreed to meet the UC and a confidential informant ("CI") purporting to be the UC's uncle to sell an AK-Style pistol and a tan colored Glock

4

pistol the following day for $2,200.00.[2]

15.    On or about October 21, 2025, at approximately 8:20am, law enforcement established surveillance at **SIMEON**'s residence. A Gray Dodge Ram pickup was backed into the driveway and parked next to a Silver Hyundai Sonata (FL: DW33GX). At approximately 10:08am, **SIMEON** left his residence and placed a dark colored duffel bag in the trunk of the Hyundai Sonata. Law enforcement-maintained surveillance of **SIMEON** until he arrived at the mall in Broward County.

16.    At approximately 10:47am, **SIMEON** arrived at the parking lot of a mall in Broward County. **SIMEON** parked next to the UCV. The UC and the CI both exited the UCV and met **SIMEON** at the trunk of his vehicle. This meeting was audio and video recorded by the UC. The UC introduced the CI to **SIMEON** as his uncle. **SIMEON** then opened the trunk of his vehicle and displayed firearms and magazines to both the UC and the CI. **SIMEON** then referred to the "Brazilians" (other customers) only preferring "Draco" (AK-Style) firearms because of their durability. The CI then indicated that they must be broken down to get sent over there. The CI asked **SIMEON**, "you tested that one? Everything good on that one?" in reference to the Glock pistol to which **SIMEON** then confirmed. The CI then indicated that he uses the UC to ship his firearms "over there" to which **SIMEON** said, "I do the same thing… I ship to the Bahamas." **SIMEON** told the CI that one of his shipments got intercepted a few months ago so he took a break from shipping. **SIMEON** claimed that it was a shipment of 40 "sticks" (which I believe to be street slang for long arms) and that five (5) to six (6) of those belonged to him. **SIMEON** told

---

[2]The CI has been found to be reliable and credible based on their work on previous cases. The CI receives a benefit, in the form of payment, for their work. The CI has been convicted of a felony, and has no convictions for crimes of dishonesty. Prior to this purchase, the CI was searched for contraband with negative results.

the CI that firearms are not made in the Bahamas and said that they come from the United States. **SIMEON** then broke down the high prices that he can sell the firearms for in the Bahamas.

17.     The CI then told **SIMEON**, "If you can grab them… grab as much as you can… I'll help you grab them… most likely… I'll just have him meet up with you everytime… (points to UC) because I'm a felon, I can't grab them shits." **SIMEON** responded, "nah… I understand." The CI, UC, and **SIMEON** then discussed firearms conditions and prices. The CI told **SIMEON** again that he can go through the UC anytime he has firearms because the CI can't grab them because of his felony convictions to which **SIMEON** responded, "nah… I understand." The UC then asked **SIMEON** to confirm the price of the firearms he was currently selling. **SIMEON** specified he wanted "14" for the AK-style pistol and "8" for the Glock pistol. The UC gave **SIMEON** $1,400.00 of ATF OIF in exchange for the M10-762P M&M Industry 7.62x39mm pistol (DF-3424-19).

18.     The CI gave **SIMEON** $800.00 of ATF OIF for the Glock 45 .9mm pistol (ADLU800). The CI asked **S4 IMEON** if he had a bag for the Glock pistol "because I don't touch them." **SIMEON** placed the firearm in a tan gun box and into a backpack along with a black 50 round drum magazine. **SIMEON** used the backpack to conceal its contents and walked over to the rear driver's side of the UCV. **SIMEON** then emptied its contents in the UCV and returned the backpack to the trunk of his vehicle. Next, **SIMEON** grabbed the AK-Style pistol from the trunk of his vehicle and hid it in his pants. **SIMEON** then walked to the UCV and placed it inside the rear driver's side area. Once the transaction was concluded, everyone entered their vehicles and left the area.

19.     Based on my training and experience and review of relevant databases, I know that

6

Glock firearms and M&M Industries firearms are manufactured outside the state of Florida.

**October 23, 2025 Controlled Purchase**

20.    On or about October 23, 2025, **SIMEON** agreed to meet the UC and CI and sell a firearm and several MCDs.  The UC stated in text messages that the UC wanted certain firearms because the "old school Colombians in Colombia want them."  On or about October 23, 2025, at approximately 8:30am, law enforcement established surveillance at **SIMEON's** residence. **SIMEON**'s known vehicle, a Silver Hyundai Sonata (FL: DW33GX) was the only vehicle observed in the driveway. At approximately 10:00am, **SIMEON** exited **SIMEON**'s residence and opened the trunk to his vehicle, appearing to review the contents of the trunk.

21.    Law enforcement followed **SIMEON** as he drove directly to the mall in Broward County to meet with the UC and the CI to conduct the firearms transaction.  Prior to this transaction the CI was searched for contraband with negative results.  This meeting was audio and video recorded. At approximately 10:30am, **SIMEON** arrived at the mall and parked his vehicle next to the UCV. The CI then exited the passenger side of the UCV and invited **SIMEON** into the UCV. **SIMEON** retrieved a black bag covered in a "red lips" pattern from his trunk.

22.    **SIMEON** then entered the rear passenger side of the UCV. The CI sat behind the UC on the rear driver's side. Once inside the vehicle, **SIMEON** produced a loaded firearm and handed it to the CI. The CI then gave it to the UC, who unloaded the firearm. **SIMEON** then provided the UC and CI with information about the functionality of the MCD and instructions on how to install it on a firearm. The CI reminded **SIMEON** that he is a felon while agreeing to purchase the pistol with the MCD. **SIMEON** then negotiated the price of seven (7) MCDs with the UC.  The UC paid **SIMEON** $1,600.00 of ATF OIF for seven (7) MCDs. In a separate

7

transaction, the CI paid **SIMEON** $1,500.00 of ATF OIF for the Glock 20 10mm Pistol.

23. The CI then told **SIMEON** about purchasing ammunition from gun shows in the past, but the purchases made him nervous because he would be required to fill out a sign-in-sheet, which could reveal his convicted felon status. **SIMEON** then offered the UC additional firearms that were available for sale. The UC agreed to meet in the future to conduct more firearms purchases. Once the transaction was concluded, **SIMEON** exited the UCV and continued to speak to the UC and CI. The CI emphasized that he would purchase additional firearms from **SIMEON**, preferring "bigger" firearms. The UC asked **SIMEON** about his clothing, and **SIMEON** indicated that he kept designer clothing in a closet at his "crib," and the UC indicated that the closet was **SIMEON**'s workshop. **SIMEON** then left the area in his vehicle.

24. Based on my training and experience and review of relevant databases, I know that Glock firearms are manufactured outside the state of Florida.

**October 24, 2025 Controlled Purchase**

25. On or about October 24, 2025, **SIMEON** sent the UC a photo of a 40mm Single-Shot grenade launcher that **SIMEON** stated was available for sale for $2,000-$2,500. The UC expressed interest in purchasing it and agreed to meet **SIMEON** at a location in Fort Lauderdale, FL. **SIMEON** stated he had the launcher in his possession but was at work until 3:00am. However, **SIMEON** would have a third party deliver the launcher to his location. **SIMEON** stated that the launcher would be delivered between 1:00pm -2:00pm.

26. At approximately 12:30pm, law enforcement established surveillance at SIMEON's workplace in Fort Lauderdale in anticipation of this transaction.. **SIMEON**'s Silver Hyundai Sonata was observed parked in front of the business. At approximately 12:31pm,

8

SIMEON informed the UC that the transaction would have to occur later because the third party was unable to drop it off at the time they had agreed. Law enforcement remained on surveillance, maintaining visual of the front and rear of the business as well as SIMEON's vehicle.

27. At approximately 6:43pm, SIMEON sent the UC a screen capture of a message from the third party confirming they were headed towards SIMEON's location with no indication of an arrival time. At approximately 7:10pm, the UC asked SIMEON where in the business plaza they would be meeting. SIMEON told the UC to go to another business in the plaza adjacent to his workplace and indicated that the third party had not yet arrived.

28. At approximately 8:18pm, the UC texted SIMEON that he was on his way to the agreed meeting location. At approximately 8:20pm, the UC arrived at the business plaza in the undercover vehicle ("UCV") and told SIMEON he had arrived. This meeting was audio and video recorded by the UC. A few minutes later, SIMEON exited his workplace and met the UC near the UCV. SIMEON then notified the UC that the third party bringing the launcher was 20 minutes away. SIMEON and the UC discussed firearms sales, narcotics and the lethality of the grenade launcher. At approximately 8:31pm, SIMEON received a phone call from the third party and then told the UC that the third party was 16 minutes away. At approximately 8:48pm, SIMEON told the UC, "He is almost here" in reference to the third party. SIMEON then retrieved a black backpack covered with "red lips" pattern and went inside his workplace. The UC remained outside of the UCV near the front entrance.

29. During this time, law enforcement observed a 2018 Black Honda Sedan parked behind SIMEON's workplace near the rear entrance. A Hispanic male (Individual-1) exited the Honda and met SIMEON outside of the vehicle. SIMEON was then observed walking with the

backpack through the rear entrance and exited through front entrance where he reunited with the UC. Individual-1 left in the Honda Sedan and parked near a Chase Bank located on the other side of the plaza. During the transaction, law enforcement continued surveillance of Individual-1's vehicle at the Chase Bank. Individual-1's vehicle was backed into park with the headlights turned on. No one was observed exiting, nor did anyone approach Individual-1's vehicle. At approximately 9:15pm, Individual-1's vehicle departed.

30. At approximately 8:54pm, **SIMEON** met the UC with the backpack on the passenger side of the UCV. **SIMEON** then informed the UC that he met the third party who brought the launcher. **SIMEON** placed the backpack on the front passenger seat and had the UC remove the launcher from inside the backpack. The UC then paid **SIMEON** the agreed upon $2,000.00 of ATF OIF in exchange for the ALS ALSTAC 40mm Single-Shot Launcher (03844). At approximately 8:57pm, the transaction was concluded. The UC departed the area and **SIMEON** returned inside his workplace.

## CONCLUSION

31.    Based upon the information provided above, there is probable cause to believe that

**BRIAN PETER SIMEON** has committed violations of Title 18, United States Code, Sections

922(a)(1)(A), 922(d)(1), and 922(o).

**FURTHER YOUR AFFIANT SAYETH NAUGHT.**

Respectfully submitted,

Cesar Calcano, Special Agent
Bureau of Alcohol Tobacco Firearms
And Explosives

Sworn to and subscribed before me telephonically by Facetime
on _____19th_____ day of November 2025.

HON. ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

11